## FIDELITY & COLUMBIA TRUST CO. v. GLENN, Collector of Internal Revenue.

### No. 148.

District Court, W. D. Kentucky, Louisville Division.

July 31, 1941.

David R. Castleman and David R. Castleman, Jr., both of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the executor of the estate of Albert Ivison, deceased, to

recover $1,460 with interest, being the amount which it claims was erroneously assessed and collected in Federal estate taxes against said estate. The amount in controversy was paid under protest, application for refund was made and denied, and this action followed.

### Findings of Fact.

The plaintiff Fidelity and Columbia Trust Company is the duly appointed and acting executor of the estate of Albert Ivison, who died a resident of Jefferson County, Kentucky, on December 16, 1936. The defendant Seldon R. Glenn is the Collector of Internal Revenue for the Western District of Kentucky, and in such capacity collected from the plaintiff the tax for which recovery is now sought.

The decedent Albert Ivison made his will on October 8, 1936, in which he named the plaintiff as his executor. On the same date he executed a trust instrument, wherein the Fidelity and Columbia Trust Company was named Trustee. This instrument created a trust with respect to 5 insurance policies taken out on the life of the decedent which policies were made payable to the Fidelity and Columbia Trust Company, Trustee under the trust agreement. The value of the policies in the trust was $35,306.89. No insurance other than that in the trust is involved in the case. The insurance policies remained in the trustee's possession until the death of Ivison when they were surrendered and the proceeds thereof collected by the trustee.

The trust agreement provided in part as follows:

"(1) The Trustee shall hold said policies and any other policies which may from time to time be made subject to the provisions of this Trust Agreement as hereinafter provided. Upon the death of Donor the Trustee will use its best efforts to collect and receive all sums payable under said policies, and the proceeds derived therefrom, together with the investments and reinvestments thereof, shall constitute an estate *part of which shall be distributed as herein directed, and the remainder shall constitute a trust estate* which shall be held in trust by the Trustee, and managed and disposed of as follows:

"(a) The Trustee may, in its discretion, use the principal of the trust estate, or as much thereof as the Trustee may deem necessary for the purpose of buying any securities or other property, real or personal, belonging to the general estate of the Donor; for the purpose of paying any debts, taxes, or expenses incident to the administration of the estate, and/or for the purpose of paying any mortgage indebtedness that may exist on any property belonging to the estate of Donor; and/or for such other purposes as the Trustee may deem proper in order to properly conserve said estate.

"(b) The Trustee shall, out of the principal of the trust estate, make the following payments:

"To Donor's brother, Sidney Ivison, $1,500.00;

"To Donor's sister, Mabel Menkle, $1,500.00;

"To Donor's wife, Katherine L. Ivison, $5,500.00;

"To Lillian Constantine, for her many kind services to Donor, $1,500.00."

The Fidelity & Columbia Trust Company as Trustee under the trust agreement, and as executor under Ivison's will, filed in the Jefferson Circuit Court a petition for advice and declaratory judgment asking that the Court approve the payment of $10,000 to the four beneficiaries named in the trust agreement, and its purpose to apply the remaining portion of the insurance proceeds to administration expenses and to pay debts and taxes owed by the decedent's estate. On June 18, 1937, a judgment was entered by consent of the parties in said action which provided in part as follows: "2. The plaintiff, Fidelity & Columbia Trust Company, Trustee, has received, and now holds, in pursuance of said agreement and the policies of insurance mentioned therein, the sum of $35,663.53. It shall, forthwith, pay out of said fund, to Sidney Ivison, $1500.00; to Mabel Menkle, $1500.00; to Katherine L. Ivison $5500.00; and to Lillian Constantine $1500.00. The balance of said fund, after further deducting therefrom the reasonable expenses of said trust, shall be paid out and applied by plaintiff, Trustee, in satisfaction of the debts, taxes and expenses incident to the settlement and administration of the general estate of said Albert Ivison, which is now in the custody of plaintiff as Executor of the Will of said Albert Ivison."

The Fidelity & Columbia Trust Company as trustee paid out of the insurance pro-

ceeds in its hands $10,000 to the four individuals designated in the insurance trust agreement, namely:

To Donor's brother, Sidney Ivison, $1500.00

To Donor's sister, Mabel Menkle, $1500.00

To Donor's wife, Katherine L. Ivison, $5500.00

To Lillian Constantine, $1500.00.

The plaintiff filed a Federal estate tax return with the defendant on March 16, 1938, in which it reported and paid a tax of $15,021.86. This return did not include in the gross estate the proceeds of any life insurance payable to and collected by the trustee under the insurance trust agreement. Under date of November 10, 1938, the Commissioner of Internal Revenue advised the plaintiff of a proposed deficiency tax of $6,984.09, caused in part by including in the gross estate the total proceeds of insurance on Ivison's life payable and collected by the trustee under the trust agreement. Thereafter the proposed deficiency of $6,984.09 was reduced to $5,472.66, which amount was paid by the plaintiff under protest on December 10, 1938. Said payment included the sum of $1,460 as a Federal estate tax on the $10,000 of the insurance proceeds which the trustee collected and paid to the four beneficiaries named in the insurance trust agreement. The plaintiff made claim for refund for this $1,460, which was denied by the Commissioner.

### Conclusions of Law.

The extent and value of decedent's taxable estate for Federal estate tax purposes is controlled by Section 302 of the Revenue Act of 1926, as subsequently amended, being Section 811 of Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811. Section 302 (g), Section 811(g), Internal Revenue Code, deals with the proceeds of life insurance and provides as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States. * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

Accordingly, if the $10,000 paid by the Trust Company to the four designated beneficiaries is construed as being "receivable by the Executor as insurance under policies taken out by the decedent upon his own life" the tax was properly assessed and collected. However, if it is construed as insurance receivable by beneficiaries other than the Executor, it comes within the $40,000 exemption and the tax was improperly assessed and collected.

Under the insurance trust agreement the Trustee was obligated to make specific payments totaling $10,000 to four specified beneficiaries. With respect to these sums it had no discretion. This duty was directly imposed upon it by Section 1 (b) of the trust agreement. Whatever discretion the Trustee had with respect to the expenditure of the insurance proceeds, as given to it under Section 1(a) of the trust agreement, dealt only with the remainder of the proceeds after the $10,000 had been paid to the four designated beneficiaries. This appears very clear and plain from the first paragraph of Section 1, which provides that the proceeds from the insurance policies shall constitute an estate (not a trust estate), part of which estate is to be distributed as therein directed, and the remainder shall constitute the trust estate to be held by the Trustee as provided in Sub-section a. Sub-section b, which directs the distribution of $10,000, is part of Section 1 and falls within the provisions of Section 1 which provides "part of which shall be distributed *as herein directed*." It is true that the draftsman could have avoided all questions by having specifically stated "as herein directed by Sub-section b," but as Sub-section b is the only place where the direction is given there can certainly be no doubt that such is the proper construction of the instrument just the same as if such specific words had been used. It is one of the fundamental principles governing the construction of written instruments that the instrument is to be considered and construed in its entirety. Newcomb v. Newcomb, 197 Ky. 801, 248 S.W. 198; Sower v. Lillard, 207 Ky. 283, 269 S.W. 330. The judgment of the Jefferson Circuit Court construing the trust instrument as imposing an absolute duty upon the Trustee to pay the $10,000 to the named beneficiaries before using any of the insurance proceeds

for estate purposes was not in reality a decision by the Court on the question involved, as such judgment was entered by the consent of the parties. But insofar as the duties imposed upon the Trustee in that case are concerned it has the force and effect of any other judgment duly entered in a Court having jurisdiction in the matter. Kentucky Utilities Co. v. Steenman, 283 Ky. 317, 141 S.W.2d 265.

■■ The collection by the Trustee of the proceeds of the insurance policies in question and the payment by it of $10,000 of such proceeds to the four named beneficiaries did not make the $10,000 so paid a part of the gross estate of the decedent or make it subject to the tax imposed by Section 302(g) of the Revenue Act of 1926, Section 811(g), Internal Revenue Code. The insurance was payable to the Trustee by the terms of the policy; it was not payable to the estate and the proceeds never came into the hands of the executor. The Trustee was legally bound by its trust agreement to pay the $10,000 to the designated beneficiaries. Its payment to the beneficiaries was in effect the same as if the payment had been made by the Insurance Companies direct to the named beneficiaries. The Trustee was merely the conduit through which the proceeds passed from the Insurance Companies to the named beneficiaries, which process was the combined result of existing legal contractural obligations. If the decedent was legally entitled to insure his own life for the benefit of others and to provide for direct payments by the Insurance Companies to the beneficiaries named in the policies, there is no reason why the indirect method of payment, reaching the same result by reason of valid contractural obligations, should not also be recognized as valid. The record shows no facts which would entitle the executor to collect this part of the proceeds from either the Insurance Companies or from the Trustee. It has no contractural right in its favor as against the Insurance Companies, and established principles of insurance law protect the rights of a beneficiary named in a policy (the Trustee in this case) against the claims of the decedent's representative or a creditor. Section 655, Kentucky Statutes; Holden v. Stratton, 198 U.S. 202, 25 S.Ct. 656, 49 L. Ed. 1018; In re Renaker, D.C.E.D.Ky., 295 F. 858; In re Weick, 6 Cir., 2 F.2d 647. Accordingly, the $10,000 in question was not "receivable by the executor as insurance" as is required by the taxing act in question in order to make it taxable. Commissioner of Internal Revenue v. Jones, 6 Cir., 62 F.2d 496; Boston Safe Deposit & Trust Co. v. Commissioner, 1 Cir., 100 F.2d 266; Estate of Rohnert, 40 B.T.A. 1319.

■■ The defendant contends that the above rule is not applicable because the trust was created as a substitute for testamentary disposition, calling attention to the facts that the decedent paid the premiums and reserved the right to change the beneficiary, to borrow against the policies, and to collect their cash surrender values. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Walker v. United States, 8 Cir., 83 F. 2d 103. All life insurance is to a large extent testamentary in character, in that it contemplates the transfer of property upon the death of the insured in accordance with the directions of the decedent. But that characteristic does not in itself make it taxable if it is in fact insurance. Walker v. United States, supra; Ballard v. Helburn, D.C.W.D.Ky., 9 F.Supp. 812, affirmed 6 Cir., 85 F.2d 613; Commissioner v. Sharp, 3 Cir., 91 F.2d 804. The payment of premiums by the insured and the retention by him of control and dominion over the policies makes the payment of the proceeds upon the death of the insured taxable within constitutional provisions (Chase National Bank v. United States, supra), but still leaves the extent of the tax governed by the provisions of the taxing act. It does not automatically make all such insurance proceeds part of the gross estate and subject to tax. Most insurance policies now carry such provisions, and are accordingly of a testamentary nature, but proceeds therefrom payable to beneficiaries other than the estate are exempt under the Federal Act to the extent of $40,000. The policies under consideration are governed likewise by the same statutory provisions.

■■ The foregoing principles are not affected by the fact that the decedent executed his will and the trust agreement at the same time and also at that time transferred the insurance policies in question to the Trustee. The transaction was a bona fide one and fully authorized. The exemption contained in the statute is not to be denied even if the insured's motive in entering into the transactions was to reduce the gross estate which he might otherwise leave. He was privileged to decrease the

amount of what otherwise would be his taxes by means which the law permitted. Commissioner v. Le Gierse, 2 Cir., 110 F.2d 734, and cases therein cited.

The plaintiff is entitled to judgment in the sum of $1,460 with 6% interest thereon from December 10, 1938, and its costs herein.